# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | M.J. No.: *MJ04-M-239 JLA* |
| ROLANDO RIVERA | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about **October 28, 2004** in **Bristol County,** and elsewhere, in the District of **Massachusetts,** the defendant did knowingly or intentionally possess with intent to distribute, and to distribute: heroin, a Schedule I controlled substance, in violation of Title **21** United States Code, Section(s) **841(a)(1)**. I further state that I am a **D.E.A. Task Force Agent** and that this complaint is based on the following facts:

**Please see attached Affidavit of D.E.A. Task Force Agent William Delaney**

Continued on the attached sheet and made a part hereof:   [x] Yes   [ ] No

_____
Signature of Complainant
D.E.A. Task Force Agent William Delaney

Sworn to before me and subscribed in my presence,

**November 5, 2004**         at   **Boston, Massachusetts**
Date                                City and State

**Joyce London Alexander**
**United States Magistrate Judge**           _____
Name and Title of Judicial Officer                Signature of Judicial Officer

**AFFIDAVIT OF TASK FORCE AGENT WILLIAM F. DELANEY, JR.**

**THE AGENT'S BACKGROUND AND QUALIFICATIONS**

I, William F. Delaney, Jr., being duly sworn, do hereby depose and state under oath as follows:

1. I am employed by the Massachusetts State Police and have been so employed for the past twenty-two years. I have been a Sergeant for the past eight years and have been in the Detective Division for the last seventeen years. Throughout the past seventeen years, I have participated in narcotics investigations. For the past four years, I have been assigned to the U.S. Drug Enforcement Administration ("DEA") Task Force in New Bedford, Massachusetts. My primary duties involve the investigation of narcotics offenses. I have received specialized training in the investigation of narcotics cases from DEA and the Massachusetts State Police. As a duly deputized Task Force Agent ("TFA"), I am an investigative or law enforcement officer of the United States and am empowered by law to conduct investigations and to make arrests for federal felony offenses.

2. During the course of my law enforcement career, I have participated in hundreds of narcotics investigations involving the seizure of large amounts of marijuana, cocaine, and heroin. Through my training and experience, I have become familiar with the methods used by drug-traffickers for the packaging and transportation of narcotic substances and/or monies derived from

the sale of, or used to purchase, narcotic substances.

3. This affidavit is submitted in support of an application for a criminal complaint charging ROLANDO RIVERA with possession with the intent to distribute, and distribution of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code section 841(a)(1).

## THE INITIAL INVESTIGATION

4. Since August of this year, I, along with Special Agents ("SA") and Task Force Agents assigned to the Task Force, have been investigating the criminal activities of ROLANDO RIVERA and others. As a result of my personal participation in the investigation, interviews with and analysis of reports submitted by other law enforcement personnel, conversations with the undercover officer ("UC"), Trooper Mark Lemieux, who made the purchases described below, and my consultations with other law enforcement officers, I am familiar with this investigation. This Affidavit does not set forth every fact that I and other law enforcement agents know about this investigation, but simply sets forth the facts that I believe are sufficient to show probable cause necessary for the issuance of the requested criminal complaint.

5. This investigation was initiated in August, 2004 when investigators received information about a individual from whom heroin could be purchased by calling the cellular telephone, 774-201-9990 and speaking with "Rolando". This individual was later

identified as ROLANDO RIVERA by reviewing a Massachusetts Registry of Motor Vehicles photograph of him. I have reviewed the criminal history of RIVERA and determined that he has numerous convictions for violent and drug related crimes. The convictions in the Bristol Superior Court include Armed Robbery and Assault by Means of a Dangerous Weapon, a Shotgun; Armed Robbery with a Handgun and Assault by Means of a Dangerous Weapon, a Handgun; in which he received state prison sentences. Additionally, RIVERA is presently on probation for one of the related charges in the above cases, Assault by Means of a Dangerous Weapon, a Shotgun. He also has convictions from the New Bedford District Court including Assault and Battery by Means of a Dangerous Weapon; Breaking and Entering in the Daytime with the Intent to Commit a Felony therein; Assault and Battery; and three separate cases involving convictions for felony narcotics offenses.

6. Trooper Lemieux made a total of six purchases of heroin from RIVERA in the area of his residence on Liberty Street in New Bedford, Massachusetts. The first two purchases, on August 6, 2004 and September 6, 2004 were conducted in conjunction with the Bristol County Narcotics Task Force and Cape Cod Narcotics Task Force. The last four purchases, on September 21, 2004, September 27, 2004, October 28, 2004 and November 4, 2004 were also assisted by members of the DEA New Bedford Regional Office. On the last two of the purchases made by Trooper Lemieux, he wore recording

equipment and a transmitter that allowed agents to listen to conversations as they took place, and also recorded the transactions. A recording device was also used in making consensually recorded telephone calls setting up the deals. Surveillance was conducted by me and other agents.

### THE AUGUST 6, 2004 PURCHASE

7. On August 6, 2004, Trooper Lemieux, while working in an undercover capacity, called the above number and spoke with Cindy Marcial. Trooper Lemieux asked if he could "get something" and Marcial told him to call back after 5:00 p.m. and ask for "Rolando".

8. Trooper Lemieux called back and spoke with RIVERA and asked if he could get something. RIVERA asked him how much he wanted and Trooper Lemieux indicated that he wanted "one", meaning one bag of heroin. RIVERA told Trooper Lemieux to meet him at the small store on Liberty Street in New Bedford (D&S Market, 158 Liberty Street). Surveillance was set up at that location.

9. Trooper Lemieux traveled to the area in an undercover vehicle and parked. A black male, later identified as RIVERA came to the car, opened the passenger side door and entered while identifying himself as "Rolando". He directed Trooper Lemieux to drive around the block. RIVERA the removed a clear plastic bag containing a white powdery substance believed to be heroin from his mouth. RIVERA handed the bag to Trooper Lemieux in exchange for

4

$120 in police funds. RIVERA told Trooper Lemieux that he could get him whatever he wanted. Trooper Lemieux then dropped RIVERA off on Liberty Street and drove away from the area.

10. The surveillance officers observed RIVERA walk to Trooper Lemieux's undercover vehicle, and enter it before the car left the area. The officers also saw Trooper Lemieux's undercover vehicle return to the area and park. They observed RIVERA exit the car and walk to the area of 191 Liberty Street, where the investigation determined that he resided. Trooper Lemieux left the area.

11. The substance purchased by Trooper Lemieux was not field tested and the results of the testing at the State Police Crime Laboratory are pending.

### THE SEPTEMBER 8, 2004 PURCHASE

12. On September 8, 2004 at 5:40 p.m., Trooper Lemieux made a purchase of one plastic bag of suspected heroin in exchange for $120 in police funds from RIVERA in the same manner described above and in the same area of Liberty Street in New Bedford. The deal was also surveilled by back-up units.[1] The substance purchased by Trooper Lemieux was also not field tested and the results of the

---

[1] Deputy Kurt Espinola of the Bristol County Sheriff's Office erroneously indicated in his report that he observed "Orlando Figeroa Rivera", who resided at 191 Kempton Street, exit that address and proceed to Trooper Lemieux's undercover car and enter it at 5:40 p.m. He saw the car circle the block and the same man exit Trooper Lemieux's car and leave the area.

5

testing at the State Police Crime Laboratory are pending.

13. On September 20, 2004, Trooper Lemieux called RIVERA and negotiated for the purchase of heroin eventually settling on 16 grams of heroin for $1,800.

### THE SEPTEMBER 21, 2004 PURCHASE

14. On September 21, 2004, Trooper Lemieux called RIVERA and discussed the purchase of the 16 grams of heroin for $1,800. Trooper Lemieux made the purchase of six plastic bags of suspected heroin in exchange for $700 in official advanced funds ("OAF") of the DEA from RIVERA. The deal was conducted in the same manner described above and in the same area of Liberty Street in New Bedford. RIVERA told Trooper Lemieux that he could get the rest of the heroin that he originally requested (10 grams), later for $1,100. Trooper Lemieux made several telephone calls to RIVERA in an effort to complete the deal for the additional 10 grams of heroin, but was unable to reach RIVERA.

15. The deal was also surveilled by back-up units including DEA agents and Task Force Agents. Before the deal, I observed RIVERA walk from the area of 191 Liberty Street to Trooper Lemieux's undercover vehicle and enter it. After the deal, TFA Andrew Simmons observed RIVERA exit Trooper Lemieux's undercover vehicle and walk to the backyard area of 191 Liberty Street.

16. The substance purchased by Trooper Lemieux was field tested and the results were positive for heroin. The substance was

sent to the DEA laboratory where it was tested and determined to be heroin with a net weight of 3.4 grams.

### THE SEPTEMBER 27, 2004 PURCHASE

17. On September 27, 2004, Trooper Lemieux called RIVERA and discussed the purchase of 20 grams of heroin for $2,200. Trooper Lemieux made a purchase of one plastic bag of suspected heroin in exchange for $2,200 in OAF from RIVERA in the same manner described above and in the same area of Liberty Street in New Bedford. RIVERA rode to the area of Trooper Lemieux's undercover vehicle on a bicycle and produced the plastic bag of heroin from his pants pocket.

18. The deal was also surveilled by back-up units including DEA agents and Task Force Agents. Before the deal, TFA Andrew Simmons and TFA Michael Turgeon observed RIVERA riding in the area on a bicycle. SA Michael Burke saw RIVERA ride the bicycle to Trooper Lemieux's undercover vehicle and enter it. After the deal, TFA Andrew Simmons observed RIVERA exit Trooper Lemieux's undercover vehicle and walk toward the Westwood Housing Development.

19. The substance purchased by Trooper Lemieux was field tested and the results were positive for heroin. The substance was sent to the DEA laboratory where it was tested and determined to be heroin with a net weight of 11.7 grams.

20. On October 12, 2004, Trooper Lemieux placed

a consensually recorded telephone call to RIVERA at the same cellular telephone number that he had used on the prior deals. Trooper Lemieux discussed future deals as well as the past purchases where Trooper Lemieux received less heroin than was agreed upon.

21. On October 25, 2004, Trooper Lemieux placed a consensually recorded telephone call to RIVERA at the same cellular telephone number that he had used on prior deals. Trooper Lemieux and RIVERA negotiated for the purchase of heroin to occur on Thursday, October 28, 2004.

### THE OCTOBER 28, 2004 PURCHASE

22. On October 28, 2004, Trooper Lemieux placed a consensually recorded telephone call to RIVERA at the same cellular telephone number that he had used on the prior deals. Trooper Lemieux and RIVERA discussed the quantity and price of the heroin and agreed to meet at the D&S Market located at 158 Liberty Street in New Bedford at 6:00 p.m. Surveillance was set up at that location.

23. Trooper Lemieux, while working in an undercover capacity, was provided with a listening and recording device that permitted other officers to monitor the conversations as they took place. He was also provided with $2,400 in OAF.

24. Trooper Lemieux traveled to the area in an undercover vehicle and parked. Trooper Lemieux saw RIVERA walk from the area

of 191 Liberty Street and wave to him directing him to drive his car over to where RIVERA was standing. RIVERA then entered the car and directed Trooper Lemieux to drive his car to a location in front of 197 Liberty Street and park. Trooper Lemieux and RIVERA discussed the quality and price of the heroin. RIVERA indicated that it was pure and could be cut and sold for a lot of money. RIVERA also said that his supplier would guarantee the quality and would return the money, if Trooper Lemieux was not satisfied. When Trooper Lemieux agreed to the purchase, RIVERA explained that he had to go and get the heroin. RIVERA then left the car and walked behind 197 Liberty Street. RIVERA returned a short time later, and re-entered the car. RIVERA explained that he could not get the full 20 grams but assured Trooper Lemieux that the package was pure. RIVERA handed Trooper Lemieux one plastic bag containing a brown powdery substance believed to be heroin in exchange for $2,400 in OAF. RIVERA then left the vehicle.

25. SA Burke was conducting surveillance and observed RIVERA walk to Trooper Lemieux's undercover vehicle and enter it. The officers also saw the undercover vehicle drive to the front of 197 Liberty Street and park. SA Burke saw RIVERA exit the vehicle and walk to the area behind 197 Liberty Street, and return a short time later. The officers also saw RIVERA depart the area by proceeding behind 197 Liberty Street after the deal.

26. The substance purchased by Trooper Lemieux was field

9

tested and the results were positive for heroin. The substance was sent to the DEA laboratory where the results are pending.

### THE ARREST OF RIVERA

27. On November 4, 2004 at about 6:00 p.m., Trooper Lemieux placed a consensually recorded telephone call to RIVERA at the same cellular telephone number that he had used on the prior deals. Trooper Lemieux and RIVERA discussed the sale of 50 grams of heroin for $7,000 and agreed to meet in the Liberty Street area of New Bedford. Surveillance was set up at that location.

28. Trooper Lemieux, while working in an undercover capacity, was provided with a listening and recording device. He was also provided with $7,000 in OAF.

29. Trooper Lemieux traveled to the area in an undercover vehicle and parked. Trooper Lemieux saw RIVERA walk up to his car and get inside. RIVERA had a conversation with Trooper Lemieux and asked him to drive to another location to get the heroin. Trooper Lemieux refused to do this and requested to do the deal in the same area as the prior deals. RIVERA then made a cellular telephone call in which he spoke in Spanish. RIVERA completed the call and told Trooper Lemieux that the heroin would be brought to their location.

30. RIVERA and Trooper Lemieux waited in the undercover vehicle until about 6:30 p.m. RIVERA then exited the car and went to the porch area of his residence at 191 Liberty Street. RIVERA

then said "There's the guy, There's my friend" as he looked in the direction of a Black male approaching on foot. He was later identified as Luis R. Torres. Trooper Lemieux told RIVERA to go and get the heroin. RIVERA left the undercover car and walked towards the porch of the building, and entered the front door with Torres. RIVERA appeared to speak to Torres as the two proceeded into the building of 191 Liberty Street.[2] The front door was left open and Trooper Lemieux could see RIVERA and Torres through the screen door. RIVERA came back to the car and asked Trooper Lemieux if he wanted to come to the building and meet his guy and complete the deal there. Trooper Lemieux replied that RIVERA should go and get the heroin, or bring the delivery man out to the car. RIVERA and Torres were inside for about five seconds before RIVERA came back outside and walked over to Trooper Lemieux's car and entered.

31. Inside the undercover car, RIVERA told Trooper Lemieux that he wanted to do the deal at that location. Trooper Lemieux insisted on driving around the block as they had done previously. Trooper Lemieux drove around the corner to the area where back-up units were positioned. Trooper Lemieux got out of the car and proceeded to the trunk to get the money for the purchase. This was the signal for the back-up units to move in for the arrest. RIVERA threw a plastic bag containing approximately 50 grams of suspected

---

[2] This building is a residential property where the front door opens into the apartment of 191 Liberty Street occupied by RIVERA.

11

heroin out of the window of the car as the officers converged to arrest him. RIVERA was placed under arrest. Trooper Lemieux still had custody of the $7,000 OAF. The plastic bag of suspected heroin was recovered on the ground from the area outside of the car.

32. RIVERA was provided his Miranda rights and asked if Torres was the delivery person of the heroin for the deal. RIVERA denied that Torres was involved. Instead he related that he contacted Torres to come and watch his children during the drug deal. RIVERA admitted to being a drug user and that he did this "stuff" in order to get his "batch".[3]

33. The substance obtained by Trooper Lemieux was not field tested and the results of the testing at the DEA laboratory are pending.

34. Based upon the foregoing, and based upon my training and experience, I submit that there is probable cause to believe that on October 28, 2004, in Bristol County, RIVERA possessed with intent to distribute, and did distribute heroin, in violation of

---

[3] Torres was arrested on unrelated outstanding state court default warrants and also on state narcotics charges. A third person, Edward Romero, who was in a car nearby was also arrested on related state court narcotics charges.

Title 21, United States Code, Section 841(a)(1).

William F. Delaney, Jr
Task Force Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 5th day of November, 2004.

JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

13

JS 45 (5/97) - (Revised USAO MA 1/15/04)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** _____   **Category No.** II   **Investigating Agency** DEA

**City** New Bedford   **Related Case Information:**

**County** Bristol
Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant x
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Rolando Rivera            Juvenile   ☐ Yes   ☒ No

Alias Name   _____

Address   191 Liberty Street, New Bedford, MA

Birth date (Year only): 1973   SSN (last 4 #): 9662   Sex  m   Race: Hispanic   Nationality: U.S.

Defense Counsel if known: _____   Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA   Glenn A. MacKinlay            Bar Number if applicable _____

Interpreter:   ☒ Yes   ☐ No      List language and/or dialect: _____

Matter to be SEALED:   ☐ Yes   ☒ No

☐ Warrant Requested     ☐ Regular Process     ☒ In Custody

**Location Status:**

Arrest Date:   November 4, 2004

☒ Already in Federal Custody as   November 4, 2004   in   New Bedford, MA   .
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____   on _____

Charging Document:   ☒ Complaint   ☐ Information   ☐ Indictment
Total # of Counts:   ☐ Petty ___   ☐ Misdemeanor ___   ☒ Felony 1

Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: November 4, 2004   Signature of AUSA: /s/ Glenn A. MacKinlay

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant     Rolando Rivera

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 U.S.C 841(a) | Possession with Intent , Distribution of Heroin | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: